IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **PEDRO L. BONNET,**<br><br>Plaintiff,<br><br>v.<br><br>**HACIENDA CENTRAL, INC.,**<br><br>Defendant. | **CIVIL NO. 20-1172 (DRD)** |

**OPINION AND ORDER**

On April 9, 2020, Pedro L. Bonnet (hereinafter, "Plaintiff") filed a *Complaint*, against Hacienda Central, Inc. (hereinafter, "Defendant") for trademark infringement under the Lanham Act of 1946, 15 U.S.C. §1051 et seq. (hereinafter, "Lanham Act") for which the Court has subject matter jurisdiction under claims based on 28 U.S.C. §1331 and 1338 (a). *See* Docket No. 1. Plaintiff's claims consist of trademark infringement, false designation of origin, and other acts of unfair competition arising under statutes of the United States, the Lanham Act, the Common Law, and the law of the Commonwealth of Puerto Rico proscribing unfair and deceptive trade practices (10 L.P.R.A. § 257 *et seq*.). Plaintiff requests damages plus all profits that are attributable to the infringing sale of goods; the destruction of all products, advertisements, labels, signs, prints, packages, wrappers, receptacles and all other materials in their possession or under the control of Defendant which infringes upon Plaintiff's mark, and a permanent injunction pursuant to 15 U.S.C. § 1116.

On June 10, 2020, Defendant filed a *Motion to Dismiss* for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). In sum, Defendant alleges that Plaintiff has failed to establish essential elements of his causes of action failing to state a claim regarding

each of the causes of action stated in the *Complaint*. *See* Docket No. 9. On July 3, 2020, Plaintiff filed an *Opposition to Motion to Dismiss* (hereinafter, *Opposition*"). *See* Docket No. 14. Subsequently, Defendants reciprocated with a *Reply to Plaintiff's Opposition to Motion to Dismiss* (hereinafter, "*Reply to Opposition*") on July 17, 2020.

After a careful analysis of the arguments presented by both Parties, and for the reasons stated herein, the Court **DENIES** Hacienda Central, Inc.'s *Motion to Dismiss*.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Taking the allegations set forth in the Complaint as true, the facts are as follows:

Plaintiff is the owner of a domestic corporation dedicated to the business of retail and grocery which sells "a wide variety of products and prepared meals under the mark LA HACIENDA® and LA HACIENDA MEAT CENTER®." Docket No. 1 at ¶ 10. "The LA HACIENDA MEAT CENTER and/or LA HACIENDA® mark is prominently displayed on all products sold by [Plaintiff]." *Id.* Records show that marks LA HACIENDA MEAT CENTER and LA HACIENDA have been registered under the United States Patent and Trademark Office (hereinafter, "USPTO") under registration numbers 4,992,481 since July 5, 2016 and 4,988,101 since June 28, 2016, respectively. *See* Exhibit 1-1 at Docket No. 1. Additionally, records show that LA HACIENDA MEAT CENTER and LA HACIENDA trademarks have been registered in the Puerto Rico Trademark Registry (hereinafter, "PRTO") under registration numbers 215330 and 215089, respectively, issued by the Department of State of the Commonwealth of Puerto Rico. Both trademarks have been registered in the PRTO since September 10, 2015. *See* Exhibit 1-2 at Docket No. 1.

Defendant, Hacienda Central, Inc. is a domestic corporation with its principal office in Juncos, Puerto Rico that is dedicated to "prepared and packaged meals consisting primarily of

meat, poultry or vegetables." Exhibit 1-3 at 4 at Docket No. 1. Defendant sells these products under the term H PRODUCTOS LA HACIENDA and/or PRODUCTOS LA HACIENDA. The mark H PRODUCTOS LA HACIENDA has been registered in the PRTO under registration number 200788 since March 10, 2015, issued by the Department of State of the Commonwealth of Puerto Rico.

Plaintiff alleges that Defendant's use of its mark to sell its products constitutes a "deceptive and misleading business practice of using a confusingly similar mark that infringes upon the rights [of Plaintiff]." Docket No. 1 at ¶ 6. According to Plaintiff:

> Defendant's use of the LA HACIENDA® Marks is likely to cause confusion or mistake or to deceive persons into the erroneous belief that Defendant's products are authorized, endorsed or sponsored by [Plaintiff] or are connected in some way with [Plaintiff] as Defendant has adopted the name H PRODUCTOS LA HACIENDA to imply that its products originate from LA HACIENDA MEAT CENTER and/or LA HACIENDA when the Defendant could have chosen other name such as PRODUCTOS HACIENDA CENTRAL to identify its product which is similar to its corporate name Hacienda Central instead of the term H PRODUCTOS LA HACIENDA which carries the false connotation that its products originate from Bonnet's LA HACIENDA® and LA HACIENDA MEAT CENTER®.

Docket No. 1 at ¶ 23. In the *Opposition,* Plaintiff argues that "[a]fter learning of defendant's intent to misappropriate La Hacienda® Marks' goodwill, Plaintiff immediately enforced its trademark rights by sending a cease and desist letter to defendant and requesting the cancellation of [D]efendant's trademark in the Puerto Rico Trademark Registry, an ongoing procedure." Docket No. 14 at 1. Meanwhile, Defendant stated that Plaintiff's "federal registrations are currently undergoing a cancellation proceeding due to [Plaintiff]'s lack of use thereof in interstate commerce and otherwise." Docket No. 9 at 2. In turn, Plaintiff alleges that after they requested the cancellation of Defendant's trademark in Puerto Rico, "[i]n retaliation for the filing of this Complaint[,] defendant sought to cancel [Plaintiff]'s registration in the United States Patent and Trademark Office. Nonetheless, the USPTO stayed such proceeding pending the resolution of this

3

case." Docket No. 14 at 1-2. Furthermore, according to Plaintiff, Defendant also has attempted to register its mark H PRODUCTOS LA HACIENDA before the USPTO and its application was rejected on the basis of confusing similarity with the LA HACIENDA® marks belonging to Plaintiff. Docket No. 1 at ¶ 23 and Exhibit 1-3.

On April 9, 2020, Plaintiff filed a *Complaint* against Defendant founded on four causes of action and requesting the Court for a permanent injunction against Defendant. The first cause of action is founded upon trademark infringement in violation of Section 32(1)(a) of the Lanham Act (15 U.S.C. § 1114(1)(a)). Plaintiff alleges that "the H PRODUCTOS LA HACIENDA and/or PRODUCTOS LA HACIENDA designation resembles the LA HACIENDA Mark® marks in a manner that creates likelihood of confusion, mistake or deception." Docket No. 1 at ¶ 29. Plaintiff further argues that he has suffered irreparable injury and loss of reputation as a consequence of Defendant's "deliberately and maliciously [. . .] acts for the purpose of causing injury [. . .] and with intent to trade on the vast goodwill associated with [Plaintiff's] marks." Docket No. 1 at ¶ 31. Additionally, Plaintiff alleges that Defendant knew of the LA HACIENDA marks before engaging in the trademark infringement.

The second cause of action is founded upon false designation of origin in violation of section 43(a)(1) of the Lanham Act (15 U.S.C. § 1125(a)(1)). According to Plaintiff, Defendant's unauthorized use of a "a word, symbol or device, or combination thereof, [that results in] a false designation or origin" constitutes a violation of Section 43(a)(1) of the Lanham Act., 15 U.S.C. §1125(a)(1) and "[u]nless Defendant is restrained from continuing its wrongful acts, the damage to [Plaintiff], which is irreparable, will only continue to increase." Docket No. 1 at ¶ 37. The third cause of action in the *Complaint* relates to common law infringement as Plaintiff alludes that

Defendant's use of an imitation of LA HACIENDA marks creates "a likelihood of confusion among prospective purchasers, thereby inducing purchasers and others to believe, contrary to fact, that such business is sponsored, or otherwise approved by, or connected with Plaintiff." Docket No. 1 at ¶ 39. This, according to Plaintiff has "impaired and diluted that part of Plaintiff's goodwill symbolized by the LA HACIENDA®." *Id.* Plaintiff believes that the marks utilized by Hacienda Central, Inc. are "so confusingly similar [that are] likely to cause confusion, mistake or deception as to the source or origin of LA HACIENDA® Marks and constitute infringement of [Plaintiff's] rights under common law." Docket No. 1 at ¶ 41. Lastly, Plaintiff's fourth cause of action is founded upon unfair competition in violation of the law of the Commonwealth of Puerto Rico. Plaintiff alleges that Defendant's "colorable imitations" misrepresent Defendant's products as being associated in any manner whatsoever with Plaintiff and these "acts of infringement result in unjust enrichment and constitute unfair competition under 10 L.P.R.A. §257 et seq." Docket No. 1 at ¶ 47. Additionally, "[d]efendant's unfair business practices are of a recurring nature and harmful to the trade and the public at large." Docket No. 1 at ¶ 48. Moreover, a permanent injunction pursuant to 15 U.S.C. § 1116 has been requested by Plaintiff.

To provide examples of the alleged likelihood between both marks, Plaintiff has provided in the *Complaint*, photos comparing both trademarks and photos of Defendant's products displaying their mark in what appears to be a supermarket setting. One of the photos displays various trays of raw meat with the labels that appear to say "Econo", a chain of locally owned supermarkets. Additionally, Plaintiff argues that Defendant's products were recalled for contamination found by a consumer from the School Program of Puerto Rico who found a piece of metal embedded in a chub of corned beef. Plaintiff provided a copy of the news report in

Exhibit 4. *See* Docket No. 1-4. As to this issue, Plaintiff alleges that because of the confusion between both marks "companies dedicated to manage contaminated foods approached [Plaintiff] offering their services to dispose of the contaminated material." Docket No. 1 at 9.

Defendant is seeking dismissal pursuant to Fed. R. Civ. P. 12(b)(6). Essentially, he alleges that Plaintiff fails to state a valid claim for relief for all counts in the *Complaint* and thus, should be dismissed. Defendant believes that Plaintiff's claims are not actionable as they are lacking specificity regarding "where and how is [Defendant] using the mark; in which channels of trade, [and] what is the relevant market and/or the relevant consuming public." Docket No. 9 at 5. According to Defendant, Plaintiff's *Complaint* has no validity as it fails to state the following elements:

> [B]asic and critical [to] establish a valid and sufficient cause of action for trademark infringement and unfair competition, to establish the jurisdiction of the Court, applicable law and defenses, and to provide due notice to a defendant of the specific acts alleged against it, to allow it to properly and adequately defend itself.

Docket No. 9 at 2. Defendant further argues that "it is a matter of due process of law, particularly when [Plaintiff] is seeking relief from a federal court." Docket No. 9 at 6. The Defendant further claims that Plaintiff has had knowledge of Defendant's existence and registration for their trademark (H PRODUCTOS LA HACIENDA) in Puerto Rico for the past seven (7) years, and this mark "long predates all of the trademark federal and state registrations cited by [Plaintiff] as basis for his Complaint." Docket No. 9 at 2. Defendant asserts that the Complaint should be dismissed as the allegations stated therein are "no more than boilerplate allegations and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" and are not actionable "as they are made under a Puerto Rico statute that is not

6

available for civil proceedings and that does not to confer any of the remedies requested by Plaintiff." Docket No. 9 at 2-3.

In response, Plaintiff claims that the due process requirement was completed when he served Defendant with a cease-and-desist letter and requested of cancellation of Defendant's Trademark in the PRTO. Moreover, Plaintiff claims that "[t]he standard for federal trademark infringement and unfair competition is essentially the same as that for common law trademark infringement" and that standard has been adequately satisfied, under the Lanham Act and under the laws of the Commonwealth of Puerto Rico, by Plaintiff on *Complaint.* Docket No. 14 at 6. As to statements made by Defendant regarding their use of the mark for the past seven (7) years, Plaintiff argues that:

> [Plaintiff] owns common law rights in the distinctive *La Hacienda® Marks,* which he has continuously used in interstate commerce since the year 1979 in connection with retail and grocery store services. It is a well- established principle that a trademark or service mark need not be federally registered to be protected under the Lanham Act or at common law.

Docket No. 14 at 7. In respect to Defendant's claims of lack of specificity as to where and how is their mark is being used, through which channels of trade and the relevant consuming public, Plaintiff alleges that some of those claims have been made in *Complaint* and not all of them are necessary to establish an infringement claim or any claim relief pursuant to Rule 8(a)(2). As to the where and the channels of trade, it is argued that "[P]laintiff included in the allegations a photograph of the packaging of *H Productos La Hacienda* which clearly shows the product as being sold in Econo, a supermarket in Puerto Rico." Docket No. 14 at 11. As to the relevant consuming public, Plaintiff claims that "[t]he prospective purchaser of H Productos La Hacienda are consumers seeking meat. By the same token, consumers who visit La Hacienda buy meats

and prepared meals. Thus, it is evident that the products are targeted to the same prospective consumers, that is, consumers who are seeking meat products in the Puerto Rico market." *Id (citing* Docket No. 1 at ¶ 18*.)*

Finally, in the *Reply,* Defendant claims that Plaintiff "attempted to supplement or amend the allegations made in the *Complaint*, while also acknowledging, both directly and indirectly, the deficiencies of his pleadings" in the *Opposition*. Docket No. 17 at 2. Furthermore, Defendant argues that Plaintiff failed to respond as to the "the fact that [the Puerto Rico Unfair Competition statute] is not available in civil proceedings." *Id.* Regarding Plaintiff's statement that the photos illustrated in the *Complaint* containing labels from supermarkets Econo constitute *the where* the products are being sold, Defendant claims that "photographs do not constitute allegations, much less can substitute them. As a matter of due process of law, [Plaintiff] is required to establish sufficient factual allegations to establish and support a valid, sufficient and plausible cause of action." Docket No. 17 at 3. Regarding these photographs, Defendant additionally states that "[i]t is important to point out that the word Econo is barely noticeable in the picture and it does not establish the location or nature of the establishment without any kind of 'context'." Docket No. 14 at 7. Furthermore, Defendant argues that the logo Plaintiff is using as his "original logo" is not "currently in use and is in no way similar to how [Defendant] trademarks are currently used." Docket No. 14 at 6-7.

## II.     STANDARD OF REVIEW

A motion to dismiss may be filed pursuant to Federal Rule of Civil Procedure 12 (b) (6) which states that "a party may assert [. . .] defense by motion [of] failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint in a suit must clearly state all of the

plaintiffs' claims against the defendants and specify a claim for relief stating the remedy that plaintiffs believe should be granted to them. Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007), *See* Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) ("in order to 'show' an entitlement of relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).') (*quoting* Twombly, 550 U.S. at 555) (citation omitted). Thus, a plaintiff must, and is now required to, present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). *Id*. at 570; *see e.g.* Ashcroft v. Iqbal, 556 U.S. 662

When considering a motion to dismiss under this rule, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly*, and *Iqbal*. "Context based" means that a plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. *See* Iqbal, 556 U.S. at 677-679 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a *Bivens* claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. Iqbal, 556 U.S. at 678. "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'" Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009) (*quoting* Iqbal, 556 U.S. 678) (*quoting* Twombly, 550 U.S. at 557).

9

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." Iqbal, 556 U.S. 679. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id*.

Thus "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." Sanchez v. Pereira-Castillo, 590 F.3d 31, 41 (1st Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged —but has not 'show[n]' 'that the pleader is entitled to relief." Iqbal, 556 U.S. at 679 (*quoting* Fed. R. Civ. P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." *Id.* at 679-80 (*citing* Twombly 550 U.S. at 567).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" even if seemingly incredible. Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 30 (1st Cir. 2010) (*citing* Twombly, 550 U.S. at 556). Instead, the First Circuit has emphasized that "[t]he make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." Sepúlveda-Villarini, 628 F.3d at 29. Additionally, a district court may not weigh evidence in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See* Massachusetts Delivery Ass'n v. Coakley, 671 F.3d 33, 39 n. 6 (1st Cir. 2012) (emphasizing that a primary difference between a motion to dismiss under

Rule 12(b)(1) and Rule 12(b)(6) is that, under Rule 12(b)(1), a court may weigh the evidence and make factual determinations).

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592 (1st Cir. 2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Id*. at 596; *see* Iqbal, 556 U.S. at 681 ("To be clear, we do not reject bald allegations on the ground that they are unrealistic or nonsensical. . .. it is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *see* Mendez Internet Mgmt. Servs. v. Banco Santander de P.R., 621 F.3d 10, 14 (1st Cir. 2010) (The *Twombly* and *Iqbal* standards require District Courts to "screen out rhetoric masquerading as litigation.").

The First Circuit outlined two considerations for district courts to note when analyzing a motion to dismiss. García-Catalán v. United States, 734 F.3d 100, 104 (1st Cir. 2013). First, a complaint modeled on Form 11 of the Appendix of the Federal Rules of Civil Procedure which contains sufficient facts to make the claim plausible is ordinarily enough to surpass the standard prescribed under *Twombly-Iqbal*. *Id*. at 104. Second, district courts should accord "some latitude in cases where "[a] material part of the information needed is likely to be within the defendant's control." *Id*. (more latitude is appropriate in cases where "it cannot reasonably be expected that the [plaintiff], without the benefit of discovery, would have any information about" the event that gave rise to the alleged injury.) (internal citations and quotations omitted).

11

### III.     ANALYSIS

Plaintiff's *Complaint* is based on trademark infringement and false designation of origin under The Lanham Act, common law trade infringement, and unfair competition under the Puerto Rico Antitrust Law 10 L.P.R.A. §257 et seq. Foremost, The Lanham Act states that:

> Any person who shall, without the consent of the registrant—
> **(a)** use in commerce anyreproduction, counterfeit, copy, or colorable imitation of a registered mark **in connection with the sale, offering for sale, distribution, or advertising of any goods or services on** or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>
> **(b)** reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies hereinafter provided.

Lanham Act, 15 U.S.C. § 1114(1)(emphasis ours). In the *Complaint,* Plaintiff describes the marks which he registered in the USPTO and PRTO and argues that:

> Defendant's unauthorized use of a name that is a colorable imitation of the trademarks long-used by [Plaintiff] in connection with the sale, marketing and distribution of prepared, processed and packaged meals consisting primarily of meat, fish, poultry or vegetables and other related products, is done in a manner to imply falsely, deceptively and confusingly that the products which Defendant markets, distributes and offers for sale are in some way associated with, licensed by or otherwise authorized or sponsored by [Plaintiff].

Docket No. 1 at ¶ 6. Plaintiff further claims that these LA HACIENDA marks have been used by him in the sale of food, high-quality meat and prepared meals in retail and grocery stores since the year 1979. *See* Docket No. 1 at ¶ 10 and ¶ 18. Regarding the allegations at hand, Plaintiff has chosen to provide the following evidence: images of his mark and Defendant's mark to compare the alleged similarities, two photos of Defendant's products, specifically packaged meat in what

appears to be a store or a supermarket setting, and a news report of a food recall experienced by Defendant with an accompanying allegation that clients and companies dedicated to managing contaminated foods had approached Plaintiff to provide their services as a response to the news report about Defendant's recall. *See* Docket No. 1 at 5, 7, 8. *Also see*, Exhibit 1-4. Additionally, Plaintiff provided evidence as to Defendant's attempt to register H PRODUCTOS LA HACIENDA, before the USPTO which was denied because according to the USPTO, "[a]pplicant's mark is highly similar to the cited registrations in sound, appearing, and commercial impression where the entire literal elements of the cites registrations in included in the applied-for mark. Specifically, the marks share the terms HACIENDA or LA HACIENDA." Exhibit 1-3 at 3.

Meanwhile, Defendant has contested that Plaintiff must fulfill the eight factors enumerated by the First Circuit in *Pignons S. A. de Mecanique de Precision v. Polaroid Corp* as guidelines in assessing likelihood of confusion in trademark infringement suits. Pignons S. A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 487 (1981). These factors are the following: "the similarity of the marks; the similarity of the goods; the relationship between the parties' channels of trade; the relationship between the parties' advertising; the classes of prospective purchasers; evidence of actual confusion; the defendants' intent in adopting its mark; and the strength of the plaintiff's mark." *Id.* According to Defendant, the information provided in the *Complaint* does not constitute pertinent allegations that cover these factors as required by First Circuit to establish a pleading for trademark infringement. Specifically, regarding the pictures provided Defendant argues that:

> [Plaintiff] merely claims the Complaint includes some photographs. However, there is not a single allegation referring to the where Hacienda Central is using the mark, or correlating use of Hacienda Central's mark to a specific type or location

13

> or commercial outlet. But most importantly, the photographs do not constitute allegations, much less can substitute them.

Docket No. 17 at 3. Six years later, the First Circuit court explained how these factors should be assessed indicating that "[they] must determine on the whole whether there is any genuine issue as to likelihood of confusion. No one factor is necessarily determinative, but each must be considered." Volkswagenwerk Aktiengesellschaft v. Wheeler, 814 F.2d 812, 817 (1987) (*citing* Astra Pharm. Products, Inc. v. Beckman Instruments, Inc., 718 F.2d 1205 (1st Cir. 1983); Pignons, 657 F.2d at 487-92). Defendant's argument is centered around the belief that Plaintiff cannot plead before the Court a trademark infringement suit without "[s]etting forth specific factual allegations as to where, the scope, extent and how (territory, relevant market, channels of trade and relevant consuming public) the parties (plaintiff and defendant) have used the marks in question." Docket No. 9 at 5-6. The Defendant's analysis is wrong. The Court explains.

Defendant makes reference to the decision of the Court in *Niagara Bottling, LLC. v. CC1 Ltd. P'ship* where the eight Pignons factors were analyzed as part of a determination as to whether a motion to dismiss would be granted. Niagara Bottling, LLC. v. CC1 Ltd. P'ship, 381 F. Supp. 3d 175 (2019). However, Defendant fails to recognize that *Niagara* and the case at hand are fairly different. In *Niagara*, plaintiff and defendant had already reached a settlement agreement. "The Settlement Agreement stated [that] defendant would not use [p]laintiff's marks, or any mark confusingly similar thereto. They further agreed the Defendant would dispose of all existing inventory and not sell inventory with similar marks after [the phase-out date]." Niagara Bottling, LLC., 381 F. Supp. 3d at 179 (quotations omitted). On that occasion, "the Court f[ound] that Plaintiff satisfie[d] the two prongs to establish trademark infringement. However, the Court acknowledge[d] that the issue [had] already [been] discussed and agreed upon in

the Settlement Agreement." Niagara Bottling, LLC., 381 F. Supp. 3d at 184. Accordingly, an admission of potential responsibility had already been established by defendant and the case was at a time in place that the case at hand is not.

The Court, therefore, will not examine the eight factors established by the *Pignons* court at this juncture because these factors were not established by the First Circuit to be used in the context of determining whether Plaintiff has failed to establish essential elements of his causes of action in the *Complaint*. These factors do not apply to the analysis of whether to grant a dismissal pursuant to Fed. R. Civ. P. 12(b)(6). A simple look at the leading cases that establish and solidify the use of these factors, and which were continuously cited by Defendant in its *Motion to Dismiss* and *Reply,* clearly demonstrate that none of these cases were examining the likelihood of confusion at the pleadings stage of the suit. For example, in *Pignons*, plaintiffs were appealing a decision of the United States District Court for the District of Massachusetts to grant defendants' a motion for summary judgment, after the Court established the eight factors and used them to analyze the likelihood of confusion, the Court affirmed the summary judgment because there was no likelihood of confusion between the products. See Pignons, 657 F.2d at 487-95. In *Astra*, the defendant filed a motion for summary judgment. After the Court examined the eight *Pignons* factors, the Court entered summary judgment in favor of the defendant. *See* Astra Pharm., 718 F.2d at 1205-10. Finally, in *Volkswagenwek*, defendants were appealing a judgment from the United States District Court for the District of Massachusetts enjoining them from using plaintiff's registered trademark under the Lanham Act, after a careful examination of the factors, the court affirmed the injunction. Volkswagenwerk, 814 F.2d at 817-21.

The standard of review in order to grant or deny a motion to dismiss must focus primarily on whether Plaintiff's cause of action provides the possibility that Defendant might be liable for the alleged causes of action, namely, a trademark infringement. "We will affirm a dismissal only if it is transparently clear that the complaint, in light of the facts alleged, engenders no viable theory of liability." Educadores Puertorriqueños en Acción v. Hernandez, 367 F.3d 61, 66 (1st Cir. 2004); Blackstone Realty LLC v. FDIC, 244 F.3d 193, 197 (1st Cir. 2001). The Court must then examine if the allegations and information provided in the Complaint are sufficient to establish a valid claim.

It is undisputed that "[t]he Lanham Act gives a seller or producer the exclusive right to 'register' a trademark, 15 U.S.C. § 1052 (1988 ed. and Supp. V), and to prevent his or her competitors from using that trademark, § 1114(1). Qualitex Co. v. Jacobson Prods. Co., 514 U.S. 159, 162, 115 S. Ct. 1300, 1302, 131 L. Ed. 2d 248, 252-253 (1995). The Lanham Act further provides that "[a person] shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by [. . .] [the] false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion." 15 U.S.C. § 1125(a)(1). The statute does not provide a definite standard of pleadings yet it has been established by jurisprudence that in order to succeed on a trademark infringement claim, a plaintiff must establish: "(1) that its mark is entitled to trademark protection, and (2) that the allegedly infringing use is likely to cause consumer confusion." Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 12 (1st Cir. 2008) (*citing* Borinquen Biscuit, 443 F.3d at 116). Plaintiff must have raised in the *Complaint* allegations that meet both prongs of the standard in order for Defendant's *Motion to Dismiss* to be denied. "[T]he burden of proving likelihood of confusion

16

rests with the plaintiff, and the fair use defendant has no free-standing need to show confusion unlikely, it follows that some possibility of consumer confusion must be compatible with fair use[.]" KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111, 121-122, 125 S. Ct. 542, 550, 160 L. Ed. 2d 440, 451 (2004)

In *Two Pesos v. Taco Cabana*, the Supreme Court held that registration is not necessary for the protection of a trademark. Two Pesos v. Taco Cabana, 505 U.S. 763, 768, 112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992). Plaintiff providing evidence as to his federally registered marks in the USPTO and establishing their use in commerce for the last forty (40) years, has proven without a doubt that he satisfies the first prong of the test. Docket No. 1 at ¶10 and ¶12. This establishes the inherent protection that the marks and its consumers are entitled to. "[T]rademark and trade dress protection serves to protect both the trademark or trade dress owner and the public by avoiding confusion or mistake." I.P. Lund Trading Aps & Kroin v. Kohler Co., 163 F.3d 27, 35-36 (1998).

The second prong focuses on the possibility that the allegedly infringing use is likely to cause consumer confusion. "Section 1115(b) [of the Lanham Act] places a burden of proving likelihood of confusion (that is, infringement) on the party charging infringement even when relying on an incontestable registration." KP Permanent Make-Up, Inc., 543 U.S. at 118. Plaintiff has stated in his initial *Complaint* that "[t]he adoption and use by the Defendant of a name that is a virtual imitation of the LA HACIENDA® Marks is intended to capitalize on the fame, commercial visibility and public recognition of Bonnet's well-known marks." Docket No. 1 at 7. As proof of the possibility of customer confusion as to both marks, Plaintiff provides a recollection in his *Complaint*, related to an alleged instance in which clients and other companies were

confused as to whether a news report related to a recall by the Food Safety and Inspection Service of the United States Department of Agriculture was referring Plaintiff's products or to Defendant's products. According to Plaintiff:

> On information and belief, Defendant's products under the H PRODUCTOS LA HACIENDA and/or PRODUCTOS LA HACIENDA designation has been subjected to more than one (1) recall by the Food Safety and Inspection Service of the United States Department of Agriculture. In one particular instance Defendant proceeded to recall approximately 4,940 pounds of ready-to-eat corned beef products for possible contamination with extraneous materials, specifically pieces of metal, found by a consumer from the School Program of Puerto Rico who found a piece of metal embedded in a chub of corned beef. This situation alone caused the concern of some clients and confusion of companies dedicated to manage contaminated foods who approached [Plaintiff] offering their services to dispose of the contaminated material.

It is important that material examples and information be provided to the Court for a determination to be made as to this matter. An instance such as this one, where not only customers, but suppliers and other stakeholders might have been confused as to the possibility of Plaintiff's product being recalled, demonstrates the possibility of customer confusion between both marks and confirms that the *Complaint* is founded on plausible mark infringement claims. The Court is satisfied with the information provided as to the possibility that the allegedly infringing use is likely to cause consumer confusion. Furthermore, the Court notes that the two-prong test has been satisfied as to both trademark infringement pursuant to the Lanham Act and unfair competition at common law. In fact, in *Armstrong Paint v. Vanish Works*, the Supreme Court solidified this reasoning by stating the following:

> If it is a properly registered trademark, a ground to support the cause of action is violation of the Trade-Mark Act. If it is not a properly registered trademark, the ground is unfair competition at common law. The facts supporting a suit for infringement and one for unfair competition are substantially the same. They constitute and make plain the wrong complained of, the violation of the right to exclusive use.

Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 325, 59 S. Ct. 191, 196, 83 L. Ed. 195, 201 (1938) (emphasis omitted). Upon further proceedings and after the discovery stage of this case has concluded, the Defendant may renew the *Pignons* argument during the dispositive motion phase. It is then that the Court could effectively examine whether the allegations raised by Plaintiff are meritorious. Therefore, the Court deems that the aforementioned analysis is sufficient at this stage of the proceedings. "Once properly obtained, jurisdiction of the one cause of action, the alleged infringement of the trademark, persists to deal with all grounds supporting it, including unfair competition with the marked article. The cause of action is the interference with the exclusive right to use the mark." *Id.* at 324-25. Hence, after a carefully analysis of the arguments raised by the parties, the Court concludes that Plaintiff has presented sufficient facts to raise a plausible claim for relief. *See* Sepúlveda-Villarini, 628 F.3d at 29.

## IV.   CONCLUSION

For the reasons stated above and taking the *Complaint* (Docket No. 1) in the light most favorable to the Plaintiff, the Court **DENIES** Defendants' *Motions to Dismiss* (Docket No. 9).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 29th day of March, 2021.

*S/ Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge